UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
ALEXANDER ALHOVSKY and OKSANA GONCHARENKO,

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION, ADRIAN BENEPE, JACK T. LINN, ALESSANDRO GIOVANNI OLIVIERI, CAPT. MCCANTS, SGT. B. LANGSTON, and the CITY OF NEW YORK,

Defendants.
----------------------------------X

11 Civ. 3669 (NRB)

**MEMORANDUM AND ORDER**

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## I. Introduction

Pending before us are two competing motions for partial summary judgment that rest on an essentially undisputed factual record and both turn on the same narrow question of law: are Alexander Alhovsky ("Alhovsky") and Oksana Goncharenko ("Goncharenko") (together "plaintiffs"), a husband and wife who paint faces and sculpt balloons for children in Central Park, "vendors" within the meaning of 56 R.C.N.Y. § 1-05(b)(1)? In their motion for partial summary judgment, plaintiffs argue that they are not within the regulatory definition of "vendors" and are accordingly not subject to the recently enacted regulatory regime applicable to expressive matter vendors. In their motion for partial summary judgment, the City of New York and the

Department of Parks and Recreation of the City of New York (the "Parks Department") as well as several of the latter's current and prior employees (the "individual defendants") (together "defendants") argue precisely the opposite. For the reasons stated below, we interpret "vendors" to clearly encompass plaintiffs, and thus we deny plaintiffs' motion for partial summary judgment and grant defendants' motion for partial summary judgment.

## II. Background[1]

The relevant factual record before us is essentially undisputed. Alhovsky and Goncharenko are married. Pls.' R. 56.1 ¶ 15. Alhovsky and Goncharenko have painted faces and shaped balloons for children in Central Park for nineteen years and four years, respectively. Id. at ¶¶ 16-17. It is the free

[1] Unless otherwise noted, the facts recited here are drawn from the following sources: (1) Plaintiffs' Local Rule 56.1 Statement ("Pls.' R. 56.1"); (2) the affidavit of Alexander Alhovsky and the exhibits thereto ("Alhovsky Aff."); (3) the affidavit of Oksana Goncharenko ("Goncharenko Aff."); (4) the declaration of Robert K. Erlanger, Esq. and the exhibits thereto ("Erlanger Decl."); (5) the declaration of Rachel K. Moston, Esq. and the exhibits thereto ("Moston Decl."); (6) Defendants' Local Rule 56.1 Statement ("Defs.' R. 56.1"); and (7) Defendants' Response to Plaintiffs' Local Rule 56.1 Statement ("Defs.' Resp. to Pls.' R. 56.1"). As stated above, the relevant factual record before us is essentially undisputed. Aside from taking issue with the numerous legal characterizations and conclusions that are embedded in plaintiffs' Local Rule 56.1 Statement, defendants do not challenge any of its factual assertions in their response. See Defs.' Resp. to Pls.' R. 56.1 ¶¶ 1-24. Though provided with an opportunity in their reply papers, plaintiffs did not submit a response to defendants' Local Rule 56.1 Statement, whose factual assertions we therefore "deem[] to be admitted for purposes of the[se] motion[s]." Local Rule 56.1(c). Because plaintiffs refer in their reply papers to certain of the factual assertions raised in defendants' Local Rule 56.1 Statement, it appears likely that they consciously chose not to submit a response. See Pls.' Reply Mem. of Law in Supp. of Pls.' Mot. for Partial Summ. J. and in Opp'n to Defs.' Mot. for Partial Summ. J. ("Pls.' Reply") 3 (labeling defendants' arguments arising from certain of Alhovsky's prior admissions as "red herrings").

choice of the parent or other adult accompanying these children whether to give Alhovsky and Goncharenko any amount of money in appreciation for their services. Id. at ¶¶ 22-23. "Occasionally, Alhovsky and Goncharenko receive nothing for their artistic services, especially for shaping balloons." Id. at ¶ 24. In a deposition in a prior case in which he similarly brought suit against the Parks Department, among others, Alhovsky explained that he does not charge for each child's face that he paints but instead "work[s] on tips" and in particular shapes balloons as part of his service "[h]oping for the bigger tip." Moston Decl. Ex. C ("Jan. 10, 2008 Dep. Tr.") 145:11-24. When asked in the same deposition how he responds to the question, "how much does it cost to get my kid's face painted?" Alhovsky replied, "I say it's all up to you. Give whatever you want." Id. at 147:15-18. Elaborating, he continued to explain, "[a]nd if they ask me in specific what kind of donations I usually get, I say [people] roughly give anywhere from five to one thousand dollars. And--you know[,] I'm lucky to get like maybe four dollars." Id. at 147:18-21.

On June 18, 2010, the Parks Department amended §§ 1-02 and 1-05(b) of Title 56 of the Rules and Regulations of the City of New York, adding provisions relating to expressive matter vendors whose numbers in the parks of the City of New York had allegedly risen dramatically over the prior ten years. See

Moston Decl. Ex. A ¶¶ 9-32 (discussing amendment of regulations and in particular the application of those amendments in Central Park); Lederman v. N.Y.C. Dep't of Parks and Recreation, Nos. 10 Civ. 4800 (RJS), 10 Civ. 5185 (RJS), 2010 WL 2813789, at *3-4 (S.D.N.Y. July 16, 2010) (same). In § 1-02, the term "expressive matter" was introduced and defined to mean "materials or objects with expressive content, such as newspapers, books, or writings, or visual art such as paintings, prints, photography, or sculpture." 56 R.C.N.Y. § 1-02. In § 1-05(b), the general prohibition that "[n]o person in any park, or street adjacent to or abutting a park (including all public sidewalks of such abutting streets) shall sell, offer for sale, hire, lease or let anything whatsoever, except under and within the terms of a permit, or except as otherwise provided by law" was amended to provide that "[n]o person in or on any property under the jurisdiction of the [Parks] Department shall sell, offer for sale, hire, lease or let anything whatsoever, or provide or offer to provide services or items in exchange for a donation (hereinafter 'vend'), except under and within the terms of a permit, or except as otherwise provided by law. For the purposes of this entire section, persons who vend as defined herein may be referred to as 'vendor' or 'vendors.'" 56 R.C.N.Y. § 1-05(b)(1). In addition, § 1-05(b) was amended to set out a regulatory regime applicable to expressive matter

vendors. At this stage of the proceedings, the existence rather than specific provisions of this scheme is the relevant point. See 56 R.C.N.Y. § 1-05(b)(2)-(8).[2] These amendments to §§ 1-02 and 1-05(b) became effective on July 18, 2010. See 56 R.C.N.Y. §§ 1-02 Historical Note, 56 R.C.N.Y. §§ 1-05 Historical Note.

On July 30, 2010, one of the individual defendants issued a notice of violation to Alhovsky for violating § 1-05(b). Pls.' R. 56.1 ¶ 14. On April 4, 2011, following a hearing a few days earlier, Administrative Law Judge Mitchell Regenbogen of the New York City Environmental Control Board dismissed the notice of violation, finding, inter alia, that Alhovsky "was not providing the balloons in exchange for donations[] but was rather accepting donations if offered" and was thus not subject to § 1-05(b)(1). Alhovsky Aff. Ex. 2.[3]

---

[2] While we are not yet concerned with these specific provisions, we do note that the concluding caveat in § 1-05(b)(1)--"except as otherwise provided by law"--cuts a wide swath of exceptions. See, e.g., 56 R.C.N.Y. § 1-05(b)(2) (generally exempting expressive matter vendors from the requirement of obtaining a permit and further specifically exempting from most additional regulations those expressive matter vendors who operate "without using a cart, display stand or other device and without occupying a specific location for longer than necessary to conduct a transaction").

[3] As an alternate basis for his holding, Judge Regenbogen found that Alhovsky was not in violation of § 1-05(b) because (i) § 1-05(b) "does not, by its current terms, apply to any vendor who is not required to obtain a permit" and (ii) pursuant to a prior settlement agreement with the Parks Department, Alhovsky is not required to obtain a permit prior to face painting or balloon sculpting. Alhovsky Aff. Ex. 2. We agree with defendants that this basis for the holding reflects a clear misunderstanding of the law, which we appreciate was in effect for less than one year at the time that Judge Regenbogen was obliged to interpret it seemingly without the benefit of full briefing from the parties. See Defs.' Mem. of Law in Supp. of Defs.' Mot. for Partial Summ. J. and in Opp'n to Pls.' Mot. for Partial Summ. J. ("Defs.' Br.") 11-12. As of the briefing of the motions before us, defendants had sought leave to appeal Judge Regenbogen's dismissal of the notice of violation. See id. at 11 n.10.

## III. Discussion

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). As we have repeated, the factual record before us is essentially undisputed. See Defs.' Br. 1 n.1 ("defendants are not opposing plaintiffs' motion for summary judgment on the basis that there is a triable issue of fact . . . but rather because, based on the undisputed facts and law, the defendants are entitled to a judgment as a matter of law"); Pls.' Reply 1 ("[t]he parties agree that the sole issue on plaintiffs' . . . motion is one of statutory reading and analysis"). Further, it does not appear to be disputed that plaintiffs' painting of faces and sculpting of balloons qualify as "expressive matter" under § 1-02. Therefore, the narrow question of law before us is whether plaintiffs are "vendors" pursuant to § 1-05(b)(1) and thus subject to the regulatory regime applicable to expressive matter vendors, a question that turns on our interpretation of the phrase "provide or offer to provide services or items in exchange for a donation." 56 R.C.N.Y. §§ 1-05(b)(1).

"In interpreting an administrative regulation, as in interpreting a statute, we must begin by examining the language of the provision at issue." Resnik v. Swartz, 303 F.3d 147, 151 (2d Cir. 2002). As always, "[o]ur first task is to ascertain

[its] plain meaning." N.Y. Currency Research Corp. v. Commodity Futures Trading Comm'n, 180 F.3d 83, 92 (2d Cir. 1999). "'A fundamental canon of statutory construction,'" which we find equally applicable in this regulatory context, "'is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'" VIP of Berlin, LLC v. Town of Berlin, 593 F.3d 179, 187 (2d Cir. 2010) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)). This "plain meaning of [the] language in a regulation governs unless that meaning would lead to absurd results." Forest Watch v. U.S. Forest Serv., 410 F.3d 115, 117 (2d Cir. 2005). With that said, "[w]hen interpreting a statute or regulation, we are required to read that statute or regulation as a whole, . . . 'since the meaning of [its] language, plain or not, depends on context.'" Rock of Ages Corp. v. Sec'y of Labor, 170 F.3d 148, 155 (2d Cir. 1999) (quoting King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991)). In this regard, we are mindful of "the longstanding recognition that a single word must not be read in isolation but instead defined by reference to its statutory," or here regulatory, "context." Ali v. Federal Bureau of Prisons, 552 U.S. 214, 234 (2008). In accord with this appropriately broader perspective, we also "generally avoid interpreting a regulation in a way that renders one of its provisions meaningless." Lattanzio v. Deloitte & Touche L.L.P., 476 F.3d 147, 156 (2d

Cir. 2007). Where a court finds after this exercise in construction that "the language of a regulation is ambiguous, [it] typically look[s] for guidance in any interpretation made by the agency that promulgated the regulation in question." Am. Fed'n of State, Cnty. & Mun. Emps. v. Am. Int'l Grp., Inc., 462 F.3d 121, 126 (2d Cir. 2006).

We begin, as we must, with the regulatory language in question: "[n]o person in or on any property under the jurisdiction of the [Parks] Department shall . . . provide or offer to provide services or items in exchange for a donation (hereinafter 'vend'), except under and within the terms of a permit, or except as otherwise provided by law. For the purposes of this entire section, persons who vend as defined herein may be referred to as 'vendor' or 'vendors.'" 56 R.C.N.Y. § 1-05(b)(1). As an initial matter, in both their moving and reply papers, plaintiffs focus much of their argument on the plain meaning of "vend" and hence "vendors." See Pls.' Mem. of Law in Supp. of Pls.' Mot. for Partial Summ. J. ("Pls.' Br.") 6; Pls.' Reply 2. In asserting that the "Parks [Department] should be held to the common meaning of vend," which we agree is "to sell," Pls.' Reply 2, plaintiffs overlook a clear issue: the terms "vend" and "vendors" are expressly defined in § 1-05(b)(1). In interpreting regulatory language, we assign that language its plain meaning unless it is otherwise

defined. See VIP of Berlin, 593 F.3d at 187. Here, in drafting its own regulations, the Parks Department may assign a term of art whatever definition it wishes. While the plain meaning of "vend" does not encompass "provid[ing] or offer[ing] to provide services or items in exchange for a donation," in § 1-05(b), the word is expressly defined to incorporate this connotation.

In their analysis of "exchange," plaintiffs advance a somewhat more compelling argument. Citing an online dictionary, plaintiffs argue that the definition of "exchange" is "'an act of giving one thing and receiving another (especially of the same kind) in return,'" before adding that "commonly understood, 'exchange' also implies a bargain: you give me one thing and I will give you another and each of us perceives the exchange to be fair." Pls.' Reply 2. Plaintiffs assert that neither the dictionary nor allegedly "commonly understood" meaning of "exchange" encompasses their painting of faces and sculpting of balloons because these acts are performed without an understanding with patrons as to what, if anything, will be paid in return for the service. See id. at 2-3. Our own research into the plain meaning of "exchange" identifies among other definitions apt for this context certain ones that bear connotations of such a bargained for quid pro quo. See AMERICAN HERITAGE DICTIONARY 618 (5th ed. 2011) (defining "exchange" as,

inter alia, the act of "giv[ing] in return for something received" and listing "trade" as a synonym); WEBSTER'S THIRD NEW INT'L DICTIONARY 792 (2002) (defining "exchange" as, inter alia, "the act of giving or taking one thing in return for another as if equivalent" and listing "trade" and "barter" as synonyms).

The flaw in plaintiffs' approach, however, is that they fail to account for the plain meaning of "donation" in their analysis of "exchange" and interpretation of § 1-05(b)(1). A donation is commonly understood as a "gift," AMERICAN HERITAGE DICTIONARY 534 (5th ed. 2011), or more precisely "a gratuitous gift or free contribution." WEBSTER'S THIRD NEW INT'L DICTIONARY 672 (2002). As a gratuitous offering, a donation is not bargained for but rather freely given. In interpreting "exchange" we cannot ignore "donation" and its plain meaning but rather must follow the "commonsense canon of noscitur a sociis--which counsels that a word is given more precise content by the neighboring words with which it is associated." Freeman v. Quicken Loans, Inc., 132 S. Ct. 2034, 2042 (2012). Reading "exchange" together with "donation" compels us to conclude that the former when used with the latter in § 1-05(b)(1) cannot entail a bargained for quid pro quo but rather signifies only the giving of one thing and the receiving of another thing. See AMERICAN HERITAGE DICTIONARY 618 (5th ed. 2011) (defining "exchange" as, inter alia, the act of "giv[ing] and receiv[ing]

reciprocally" i.e. "exchange gifts"). We are convinced that this is the proper interpretation of "exchange" and "donation" and in turn § 1-05(b)(1) because incorporating the requirement of a bargained for quid pro quo into the meaning of "exchange" would render the entire phrase "provide or offer to provide services or items in exchange for a donation" meaningless because a donation can never properly be conceived of as having been given in consideration for a provided service or item.

Significantly, plaintiffs cannot dispute that they accept donations after face painting and balloon sculpting in all but the occasional transaction where a donation is not offered. Alhovsky himself has used the word "donation" under oath to describe the gratuitous offering that he receives for the services he renders. We agree with defendants that in accepting donations that are given for their face painting and balloon sculpting plaintiffs clearly provide services and items in exchange for donations and are thus "vendors" within the meaning of § 1-05(b)(1) and expressive matter vendors subject to the regulatory regime articulated in § 1-05(b). See Defs.' Br. 9 ("[p]laintiffs' acceptance of a tip or donation after rendering their art is sufficient to satisfy the definition of expressive matter vendor").[4]

[4] In their reply papers, plaintiffs argue that we should conceive of them as "non-soliciting performers," a phrase that does not appear in § 1-05(b) or elsewhere in Title 56 but which is drawn from Lederman, 2010 WL 2813789, at

Whether defendants are statutorily empowered to regulate plaintiffs in their provision of services and items in exchange for donations and, if so, whether this empowerment is constitutional are questions that are not necessary for us to address in order to decide the narrow question of law presented in the pending motions.[5]

---

*7, where it is contrasted with expressive matter vendors. See Pls.' Reply 3. It appears that this phrase stems from 56 R.C.N.Y. § 1-04(s), which provides that "[n]o person shall engage in any commercial activity or commercial speech in any park, except pursuant to a permit" and that "[n]o person shall solicit money or other property from persons not known to such person in any park, unless such person possesses a permit for noncommercial solicitation." 56 R.C.N.Y. § 1-04(s). See Lederman, 2010 WL 2813789, at *7 n.8. First, expressive matter vendors are never obliged to obtain a permit and so this prohibition is inapplicable to them. See 56 R.C.N.Y. § 1-05(b)(2). Further, assuming only for the sake of argument that plaintiffs are "non-soliciting performers" and not obliged to obtain a permit for that reason pursuant to § 1-04(s), there is nothing logically inconsistent with our concluding that they are also expressive matter vendors because they "provide . . . services or items in exchange for a donation" pursuant to § 1-05(b)(1). 56 R.C.N.Y. § 1-05(b)(1). While § 1-04 addresses prohibited uses of the parks, § 1-05 addresses regulated uses of the parks. It is hardly novel for an administrative agency not to prohibit a particular activity that it nonetheless regulates. Finally, we agree with what appears to be the position of the Parks Department that in any event plaintiffs are not "non-soliciting performers," at least as that term is used in Lederman, the only place that it seems to appear. See Defs.' Br. 10-11. In Lederman, Judge Sullivan contrasted expressive matter vendors with "non-soliciting performers" "such as . . . artists who merely want to display, but not sell, their work." Lederman, 2010 WL 2813789, at *7. It is clear from the factual record before us that in the course of their face painting and balloon sculpting plaintiffs do not merely wish to exhibit their work in Central Park. While plaintiffs cannot necessarily be said to sell their work, they do in all but the occasional transaction provide their services and items to patrons in exchange for donations, or "tips" to borrow Alhovsky's choice of words. As Alhovsky admits, he will create balloon animals "hoping for the bigger tip." Jan. 10, 2008 Dep. Tr. 145:11-24.

[5] While in their moving papers plaintiffs argue that regulating the provision of services and items in exchange for donations is "very clear overreaching," Pls.' Br. 6, and press this point in earnest in their reply papers, see Pls.' Reply 4-7, the issue of the Parks Department's statutory empowerment does not directly bear on whether § 1-05(b)(1), as promulgated, applies to plaintiffs' activities, which is the issue on which defendants, as well as plaintiffs, sought partial summary judgment.

## IV. Conclusion

For the reasons stated above, we interpret "vendors" to clearly encompass plaintiffs, and thus we deny plaintiffs' motion for summary judgment and grant defendants' motion for summary judgment. We direct counsel for plaintiffs and defendants to attend a subsequent conference in Courtroom 21A on October 1, 2012 at 2:45 p.m. to discuss matters going forward in this case.

Dated: New York, New York
August 16, 2012

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Attorneys for Plaintiffs:
Robert K. Erlanger, Esq.
Erlanger Law Firm P.L.L.C.
122 East 42nd Street, Suite 519
New York, NY 10168

Attorneys for Defendants:
Rachel K. Moston, Esq.
Office of the Corporation Counsel
of the City of New York
100 Church Street
New York, NY 10007